*679 The opinion of tbe Court was delivered by
Glovbe, J.
A preliminary inquiry suggested by tbe argument is, whether tbe plaintiff is authorized, and upon what terms, to discount bills of exchange. The Planters’ Bank of Fairfield, with seven others, was incorporated in 1852, (12 Stat. 212,) with the same rights conferred upon the Planters’ and Mechanics’ Bank, the Union Bank and Commercial Bank. By the 6th section of the Act of 1811, (8 Stat. 22,) amending the charter of the Planters’ and Mechanics’ Bank, it is provided, that “whereas the Union Bank of the city of Charleston have, by their memorial, prayed that they might be permitted, for the purpose of facilitating the exchange between this and our sister States, to discount bills of exchange; and whereas it appears just and reasonable that the prayer of the said memorialists should be granted: Be it therefore enacted by the authority aforesaid, that the directors of the said Union Bank and Planters’ and Mechanics’ Bank of the city of Charleston, may, and they are hereby authorized, whenever they shall see fit so to do, discount inland bills of exchange which may be offered them, at the ordinary rates of exchange among merchants.” The word “ inland ” applied to bills drawn in one State, and payable in another, is certainly not technically correct. (Duncan vs. Course, 1 Const. R. 100, and Bank of Cape Fear vs. Stinemetz, 1 Hill, 44.) But if any doubt of the intention of the Legislature is created by tbe use of the word in that connection, it is removed by the preamble, which declares it just and reasonable to facilitate “the exchange between this and our sister States.” The authority conferred was certainly not limited to bills drawn and payable in South Carolina, but was intended to embrace domestic exchanges.
The legality of the contract in this case depends more upon the rate of exchange than upon the law of usury. Current rates of exchange are so fluctuating, that if the question had been made on circuit, it could have been ascertained only by *680 evidence of tbe ordinary rate, and should have been submitted to the jury; but no such question was made,'nor was evidence offered to show that one per cent, per month on a bill having forty-five days to run, is more than the ordinary rate of exchange among merchants. The opinion of the Circuit Judge was, that the transaction was usurious, and this is the first ground of the appellant’s motion for a new trial. Waiving then the question of exchange, was the bill discounted at a usurious rate of interest ? The detestation with which all lending of money for gain was once regarded, has become less intense, and the legal restraints and penalties imposed upon those who exact more than legal interest, have been greatly relaxed. So extreme was the execration denounced against the sin of usury in the sixteenth century, that a member of the House of Commons said, “that the usurer who taketh less because he would seemdionest, shall go the Devil, because he had wittingly sinned against God, as well as the other that taketh more.” Our duty, however, is to ascertain what the law is, and not to indulge in speculations respecting its policy, which devolves on those who make the laws.
It was once doubted if half yearly payments of interest, or the taking of interest at the time of forbearing was lawful; but Lord Mansfield afterwards held that it was not usury, although upon a nice calculation, it will be found that the practice of the bank in discounting bills, exceeds the legal rate of interest. (Floyer vs. Edmonds, Camp. 112.) So, too, the opinion of the Circuit Judge in this case — that it is usury to take more than legal interest by way of discount — is not without authority. (Peachy vs. Osbaldiston, 7 Mod. 353.) Subsequently, a different rule has been established, and charges are now allowed, amounting to more than the legal rate of interest, if not made pretensively to cloak usury, and are sanctioned by custom. (Areriol vs. Thomas, 2 T. R. 52; Calicot vs. Walker, 2 Anstru. 495.) The taking of interest at the time of the loan is permitted in favor of trade, and an *681 extra charge for discounting a bill rests on tbe ground of just compensation for trouble and expense, and should not be confounded with interest. The expense of transporting gold and silver from .place to place, added to the time of payment, character of the paper, &c., produce those deviations from a par value, which the brokers daily determine. '
The defendant offered no evidence to show that the rate of discount was not a fair remuneration for trouble and expense, or that the charge was made to cover usury. \
It is not necessary to prove the consideration unless it be impeached, and conceding that this is an accommodation bill, it may be presumed that the plaintiff is holder for value. Under the general issue, he must prove the handwriting and make out a prima facie case, and afterwards, if necessary, prove the consideration in answer to the defendant’s case. “ Unless the bill be connected with some fraud, and a suspicion of fraud be raised from its being shown that something had been done with it of an illegal nature, as that it had been clandestinely taken away, or has been lost or stolen, (in which cases the holder must show that he gave value for it,) the onus probandi is cast upon the defendant.” (Mills vs. Barber, 1 Mees. & W., 425.) The burden which the defendant assumed was, to show, that the excess retained on the discount was more than enough to cover the expense of remittance, or the difference of exchange, and used as a cloak for usury. The only proof was, that the contract was for more than legal interest; but this does not make it usurious, unless it could be also shown that the legal rate of interest is the standard of exchange.
The case of Boisgerard vs. Fogartie, (2 Brev. 199,) referred to in the argument, was an action against the indorser who, upon his indorsement, negotiated the note at usurious interest, and it was held, that as to him it was a new note, and, the consideration of the indorsement being usurious, the note was void. Here the action is against the drawer of a *682 bill after acceptance, and it does not appear that originally the bill was founded upon an illegal consideration, which alone could support the defence of usury, if set up by the drawer. Had it been indorsed for the accommodation of the drawer, who procured it to be discounted at an illegal rate of interest, it would have been void against both the drawer and indorser. (Flemming vs. Mulligan, 2 McC. 175 ; Brummer vs. Wilks, Id. 178.) If the bill was founded upon a valuable consideration and put in the market, the sale of it, at any amount below the nominal value, would not sustain the plea of usury by the drawer in an action against him by a subsequent holder.
A majority of the Court cannot concur in the opinion of the Circuit Judge, that the discounting of a bill, having forty-five days to run, at one per cent, per month, is a usurious transaction. Because it exceeded the rate of interest fixed by law, is not per se evidence of usury. Defendant must also prove that it exceeded the rate of exchange, which he failed to do.
For the plaintiff it has been argued, that usury cannot be given in evidence under the general issue, unless the whole consideration be usurious, and the case of Gaillard vs. Le Seigneur, (1 McMul. 225,) is cited. It may be inferred from the language of the Court, that when a part only of the consideration is usurious, the defendant must plead it specially. That question however was not presented by the case made, and the general rule is, that on non-assumpsit, an usurious contract may be given in evidence, except in case of a speci-ality, where it must be pleaded. (Com. Dig. Title Pleader E. 13.)
As the verdict includes neither interest, costs nor damages a new trial would be granted at the instance of the plaintiff; but as this is declined the motion of the defendant is refused, on the first ground. Nor do the other grounds taken, support the motion. 'The information elicited by the question *683 propounded to Geni. Jones, consisted of facts connected with tbe management of manufacturing companies, wbicb were pertinent to tbe issue, and were properly admitted. Tbe answer to tbe last ground will be found in Devlin vs. Kilcrease, (2 McM. 425.) It is not only tbe right but, in complicated facts, tbe duty of a judge to comment on tbe evidence, provided tbe ultimate decision is not withheld from the jury.
Motion dismissed.
Wardlaw, Withers and Whither, JJ., concurred.